UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

BECKY ANDERSON,

       Plaintiff,                    Case No. 2:15-cv-04

v.                                    HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

       Defendants.

_____/

**OPINION**

In February 2011, plaintiff Becky Anderson filed an application for disability and disability insurance benefits. See Transcript of Administrative Hearing at pages 149-155, 173-179 (hereinafter Tr. at ___). Plaintiff alleges that she has been disabled since June 30, 2010, due to a learning disability, diabetes, depression and a tumor in her head. Tr. at 149, 174, 187. Plaintiff's application was denied initially and plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). Tr. at 66-68. ALJ William Zellman held a hearing on October 28, 2011. ALJ Zellman issued a decision on November 7, 2011, which concluded that plaintiff was not disabled. Tr. at 39-52. Plaintiff requested review by the Appeals Council. The Appeals Council remanded the case to the ALJ for further proceedings. Tr. at 53-56. ALJ Zellman conducted a second hearing on March 13, 2013. Tr. at 402-438.

Following the second hearing, the ALJ found that plaintiff could perform jobs that existed in significant numbers in the national economy, given plaintiff's residual functional capacity (RFC); and, therefore concluded that plaintiff was not under a "disability" under the Social Security

Act (20 C.F.R. § 404.1520(g)). Tr. at 11-21. The ALJ's decision became the agency's final decision on November 4, 2014, when the Appeals Council denied plaintiff's request for review. Tr. at 4-6. Plaintiff then filed this action.[1]

Plaintiff argues that the ALJ failed to consider the combined effects of plaintiff's Attention Deficit Hyperactivity Disorder (ADHD), Learning Disorder and Dysthymic Disorder. Plaintiff argues that the record does not contain evidence of her ability to respond to supervision, coworkers, and usual work situations. Plaintiff asserts that the ALJ erred at the fifth step by not accurately portraying Plaintiff's mental impairments in the hypothetical questions. Plaintiff argues that her combined mental impairments would prevent her from being on track in her job assignment ten percent of the time. Plaintiff argues that during her first hearing, vocational expert David Oswald testified that if plaintiff was off twenty percent in her work production, there would be no jobs in the economy that she could perform. Tr. at 399. At the second hearing, plaintiff argues that vocational expert Leslie Goldsmith testified that if plaintiff was off task ten percent of the time that she would be unable to perform any jobs in the economy. Tr. at 431. Vocational expert Goldsmith clarified that answer by stating that it may not be an issue if a worker is off task 10 percent of the time, but still is able to produce one half the amount of an average worker. Tr. 433.

Further, plaintiff complains that the ALJ failed to give weight to Dr. Halazon's opinions regarding persistence and pace. Plaintiff argues that this contradicts the ALJ's first opinion where he gave significant weight to Dr. Halazon's opinions. Further, plaintiff argues that the testimony of the vocational expert is inconsistent with the Dictionary of Occupational Titles. Specifically, plaintiff argues that the vocational expert erred in concluding that plaintiff could perform

---

[1]Both parties consented to proceed before a Magistrate Judge on April 20, 2015.

basic mathematics necessary to perform the stated jobs, and that plaintiff could perform work that required contact with other people.

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Human and Health Serv.*, 945 F.2d 1365, 1369 (6th Cir. 1991). However, where the ALJ fails to follow agency rules and regulations, the court should find that lack of substantial evidence exists to support the conclusion. *Miller v. Comm'r of Soc.,* No. 15-1405 (6th Cir., January 29, 2016). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).

The ALJ must employ a five-step sequential analysis to determine if plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines plaintiff is or is not disabled under a step, the analysis ceases and plaintiff is declared as such. 20 C.F.R § 404.1520(a). The ALJ found that plaintiff, who was 50 years old at the time of the hearing, was an unmarried widow of the deceased insured worker and met the requirements for disabled widow's benefits under the Act. Tr. at 20. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the onset date of June 30, 2010. At step two, the ALJ found that plaintiff suffered the severe impairments of diabetes, obesity, a benign pituitary tumor, a learning disorder, and an attention deficit hyperactive disorder. At step three, the ALJ found that plaintiff's impairments did not meet or exceed the severity of one of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that plaintiff maintained the residual functional capacity to perform unskilled light work as defined under 20

3

C.F.R. 404.1567(b) and 416.967(b), involving one or two steps, without constant interaction with others, and without access to drugs or alcohol. At step four, the ALJ found that the claimant had no past relevant work experience. At step five, the ALJ found that the plaintiff could perform representative jobs of hand packer, food preparer, mail clerk, and unskilled assembler.

Plaintiff argues that the ALJ's hypothetical question to the vocational expert failed to take into account plaintiff's physical and mental impairments when responding to supervisors, co-workers, unusual work situations, and the ability to change work routine. Plaintiff asserts that the hypothetical did not take into account plaintiff's ADHD and Dysthymic Disorder, which combined with her low IQ would easily take plaintiff off task by ten percent. The ALJ asked the vocational expert:

> Q. Now, as I mentioned at the start of the hearing, and I'm hoping you heard me, I'm going to find that Ms. Anderson has no past relevant work, so I'd like to start right in with some questioning. What have we got here? Initially, let's assume that we have a person who is - - well, let's just go ahead, and we'll say we have a 50-year-old worker, okay? So, a person closely approaching advanced age. High school equivalency diploma. I'd like you to assume that this individual can perform unskilled light work as defined in the Social Security regs and the <u>DOT</u>, subject to the following additional restrictions: one- to two-step job tasks that can be learned by demonstration, no constant interaction with others, no ready access to drugs or alcohol. Jobs for that person?
>
> A. Yes, there would be, Your Honor.
>
> Q. Okay. Can you give me some examples?
>
> A. Yes.
>
> Q. You can give me national numbers if you wish.
>
> A. There would be hand packager. These, of course, are light unskilled. Excuse me. And you want me to give you national numbers or Michigan numbers?

>Q. Yes, sir. National.
>
>A. I don't know where she lives. Or Wisconsin?
>
>Q. National numbers, please.
>
>A. Okay. For the packager, there would be about - - just a moment, Your Honor. There would be about 250,000 packagers.
>
>Q. Okay. Any other jobs?
>
>A. Yes, There would also be food prep jobs, like deli prep, sandwich prep, jobs of that nature, and there would be about 800,000 in the United States. There would also be general laundry jobs. Oh, excuse me, that's medium. You asked for light. I'm sorry. There would also be mail clerks, and there are about 100,000 in the United States. And I think - - do you want any more?
>
>Q. One more, please.
>
>A. Okay. Three would be a assembly, unskilled assembly, and there would be about 250,000 of those.
>
>Q: Okay. If I restricted the worker - - this is all the limitations we had before, but I'm going to restrict this worker to only occasional interaction with, with others. I'm not saying they can't be in the same room with them; but just as far as direct communication, we're down to occasional. Does that change your answer?
>
>A. No.
>
>Q. Hold on, here. What if our worker, for whatever reason, illness, concentration problems, whatever, is off task more than 10 percent of the time absent constant supervision, and that off-task behavior could include being absent two or more days per month? Jobs?
>
>A. No.

Tr. at 429-431. The vocational expert then explained that the worker could be off task ten percent of the time and still maintain her job if the worker was able to produce at least fifty percent of the work produced by an average worker. Tr. at 432.

5

In determining that plaintiff was capable of performing unskilled light work, the ALJ considered plaintiff's severe impairments, which included her learning disorder and an attention deficit hyperactive disorder. The record supports the ALJ's finding. Judy Strait, Psy. D., L.P. reviewed of plaintiff's medical record and concluded that plaintiff was not significantly limited in carrying out very short and simple instructions. Tr. at 28. Psychologist Strait noted that plaintiff was not significantly limited in her ability to accept instructions and respond appropriately to criticism from supervisors, or to get along with her co-workers and peers. Tr. at 29. Psychologist Strait concluded that plaintiff was only moderately limited in the ability to respond appropriately to changes in the work setting. *Id.* Similarly, psychologist Barbara Halazon, Ph.D., upon her second examination of plaintiff on February 26, 2013, found that plaintiff had mild limitations in her ability to interact with the public, co-workers, and supervisors, and moderate limitations in her ability to respond appropriately to changes in a routine work setting. Tr. at 312. The ALJ used this objective evidence in his hypothetical question to the vocational expert by imposing the limitation of "no constant interaction with others."

Further, in concluding that plaintiff could perform unskilled, light work that only required one or two repetitive demonstrative tasks, the ALJ considered plaintiff's mental impairments of affective disorder and ADHD. The ALJ determined that based upon the conclusions of consulting psychologists Strait, and psychologist Halazon, and plaintiff's treating psychologist Patrick Troggiano, Ph.D, plaintiff's mental impairments were mild. The ALJ took into account, plaintiff's daily activities, which the ALJ described as "full." The ALJ considered that plaintiff attends AA meetings, and various appointments, and that she shops, cleans and cooks. The ALJ found that plaintiff had only mild restrictions in interacting with others and "at most moderate limitations in terms of difficulty maintaining social functioning." Tr. at 18.

Plaintiff argues that vocational expert Goldsmith testified that no jobs are available to a worker who is off-task ten percent of the time, and that the ALJ erred by not considering that plaintiff would be off-task more than ten percent of the time. The ALJ should assign more weight to the opinions of treating physicians or treating mental health professionals as opposed to the opinions of those health professionals that have merely reviewed the record. *Miller v. Comm'r of Soc.,* No. 15-1405, slip op. at 9 (6th Cir., January 29, 2016). Plaintiff points out that psychologist Halazon wrote that: "Persistence and pace would be negatively impacted by combination of facts with chronic pain, exacerbating psychological and physical abilities," and that "She has limitations due to physical condition coupled with presentation and report suggestive of learning problems - with likely attentional and intellectual limitations, with need for structure and accommodations." Tr. at 312. The ALJ discounted Dr. Halazon's diagnosis of "rule out borderline intellectual functioning." The ALJ gave lesser weight to Dr. Halazon's GAF scores assessments which fell at the 48-50 level. The ALJ characterized Dr. Halazon's GAF scores as based more on plaintiff's statements and narrative of her life history. The ALJ noted the differences in the GAF scores assessed by plaintiff's current treating psychologist Triggiana, who provided GAF scores that fell in the range of the mid-50s to the upper 60s. Tr. at 16. Plaintiff also received a 70 GAF score in a 1999 evaluation. The ALJ made a careful assessment of plaintiff mental health records, acknowledging the conflicting GAF scores and accommodating plaintiff's mental deficiencies and socialization concerns in the hypothetical question given to the vocational expert.

Psychologist Halazon also noted that Plaintiff had no limitations with regard to understanding, remembering, and carrying out simple instructions. Tr. 311. Plaintiff had only mild limitations in the ability to make simple work related decisions. *Id.* However, Dr. Halazon opined that when faced with complex instructions, judgments, and making complex worked related

7

decisions, plaintiff would have marked limitations. *Id.* Despite plaintiff's concerns, the ALJ thoroughly considered psychologist Halazon's report in making his ruling. The ALJ's conclusions do not conflict with the findings of psychologist Halazon. Indeed the findings of the ALJ are consistent with the medical evidence in the record.

Plaintiff points out that she has difficulty with math skills and that she would have trouble as a hand packer, who must adjust quantity, as an assembler, who must assemble one or two parts, as a food clerk, who must give the correct quantity and make change, and as a mail clerk, who must sort mail, weigh mail, and determine postage. However, although plaintiff exhibited some errors when asked math questions, she was able to get a GED after quitting high school in the ninth grade. Tr. at 423. Plaintiff simply has not shown that her math skills would make her unable to perform unskilled light work confined to one or two step tasks.

Finally, plaintiff argues that the vocational expert's testimony is not consistent with the Dictionary of Occupational Titles. Specifically, plaintiff asserts that each of the positions requires basic math skills and/or interaction with other people. However, the hypothetical question took into account plaintiff limitations by giving accommodations for "unskilled" work, and by not requiring "constant" contact with other individuals.

After review, I find that there exists substantial evidence in the record that supports the Commissioner's decision that Plaintiff is not disabled as defined by the Social Security Administration. Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

Dated: February 4, 2016                              /s/ TIMOTHY P. GREELEY
                                                                                        TIMOTHY P. GREELEY
                                                                                        UNITED STATES MAGISTRATE JUDGE